IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Jeffrey Adkins,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | 1:21cv1061 (LMB/JFA) |
| Tonya D. Chapman, et al.,<br>    Defendants. | )<br>)<br>) | |

MEMORANDUM OPINION

This matter is before the Court on a Partial Motion to Dismiss ("Motion") [Dkt. No. 14] filed by defendants Tonya Chapman, Lincoln James, Sherman Lea, and Kemba Smith Pradia (collectively "defendants") in this civil rights action filed by Virginia state prisoner Jeffrey Adkins ("plaintiff"), pro se. Plaintiff alleges that the defendants, who are former members of the Virginia Parole Board, violated his rights under the Fourteenth Amendment by failing to provide him fair consideration for parole, specifically, for the purpose of this motion, by providing constitutionally inadequate "reasons for denial of parole." [Dkt. No. 1]. Defendants contend that this portion of the Complaint fails to state a viable claim for relief. [Dkt. No. 15]. Plaintiff has filed an opposition to the Motion. [Dkt. No. 19]. For the reasons that follow, defendants' Motion will be granted.

I.

The Complaint alleges the following facts. Plaintiff is a Virginia state prisoner serving multiple life sentences after being convicted in 1991 of sixteen criminal charges, including abduction, aggravated sexual battery, illegally wearing a mask on private property, breaking and entering, forcible sodomy, robbery, and weapon offenses. [Dkt. No. 1] at 5. All of the charges arose from the same incident, which involved four victims, but the charges were divided between

two trials. Id. In the first trial, plaintiff was convicted of four counts of abduction, one count of aggravated sexual battery, and illegally wearing a mask. Id. In the second trial, plaintiff was convicted of breaking and entering, forcible sodomy, four counts of robbery, and four counts of use of a firearm. Id. On January 21, 1992, the Court of Appeals of Virginia found that plaintiff's right to a speedy trial had been violated with respect to the second trial and vacated the ten convictions from that trial. Id. In June of the same year, the court of appeals "sent a mandate to the [Department of Corrections], court & legal unit," stating that "ten (10) felony convictions have been reversed and dismissed and that those ten (10) felony convictions/offenses are to be expunged from Adkins' records." Id. at 6. On August 17, 1992, the Department of Corrections provided plaintiff with a "Legal Update" stating that the ten vacated convictions had been removed from his records. [Dkt. No. 1-2] at 5

Plaintiff was first considered for parole in 2007. Id. According to the Complaint, at that hearing, the parole examiner "read off all sixteen (16) felony offenses that Adkins was originally convicted of and asked if [that information] was correct." Id. Plaintiff stated that the information was not correct and attempted to explain to the examiner that ten of his convictions had been vacated. Id. According to plaintiff, the vacated convictions were never removed from his record, and he has had "to [] explain at every parole hearing that those ten ... offenses were reversed ... and that Adkins is no longer held accountable for those offenses." Id.

On July 21, 2020, plaintiff was again considered for parole.[1] [Dkt. No. 1] at 9. The hearing was conducted by Mr. Timothy Harlow, who "asked about the ten []

---

[1] Plaintiff presumably received consideration for parole between 2007 and 2020, but any parole hearings that occurred within this time period are not described in the Complaint.

2

convictions/offenses" that had been vacated by the Court of Appeals of Virginia. Id. Plaintiff again explained that those convictions had been vacated. Id. at 10.

At the end of the hearing, Harlow asked plaintiff "if he had any questions for him." Id. at 10. Plaintiff asked Harlow "what was his biggest hang-up to making parole?" Id. Harlow replied, "crimes committed." Id. "It's not like you stole a lawnmower or anything," he explained, "you broke into a ... cabin ... and committed anal forcible sodomy on a woman. That is why you are being denied parole." Id. Plaintiff characterizes this statement as referring to two of plaintiff's vacated convictions (breaking and entering and forcible sodomy) as the basis for denying him parole. Id. Plaintiff alleges that Harlow did not mention any of the six convictions that were not overturned. Id. at 11.

On September 16, 2020, plaintiff received a letter that denied his request for parole and listed three reasons: the "serious nature and circumstances of [plaintiff's] offense(s)," the Board's conclusion that plaintiff "should serve more of [his] sentence prior to release on parole," and the fact that "release at [that] time would diminish [the] seriousness of [the] crime." Id. at 11.

Plaintiff appealed his denial of parole and requested to have "false and erroneous information expunged from his parole files, specifically the ten [] convictions/offenses" vacated by the Virginia Court of Appeals. Id. at 12. Later, plaintiff sent a letter to the Parole Board, "requesting further explanation on his reasons for denial of parole." Id. at 13. On February 26, 2021, the Board denied plaintiff's appeal. Id. To date, plaintiff has not received a response to his request for supplemental explanation for the parole denial. Id.

## II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider the sufficiency of a complaint, not to resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To do so, the complaint must allege specific facts in support of each element of each claim it raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Id.

## III.

The three-count Complaint alleges that defendants violated plaintiff's Due Process rights under the Fourteenth Amendment through "the use of reversed & annulled convictions/offenses and or invalid convictions in consideration of parole determinations" (Count I); defendants violated plaintiff's Fourteenth Amendment Due Process right "to have his parole files free from incorrect prejudicial information" (Count II); and defendants' reasons for denying him parole violated his rights under the Fourteenth Amendment (Count III). [Dkt. No. 1] at 15, 18, and 21.

Despite plaintiff's clear numbering of the three counts in his Complaint, defendants explain that they interpret the Complaint as raising two grounds for relief, characterizing Counts I and II as "Claim 1: Defendants violated Plaintiff's Fourteenth Amendment rights by impermissibly considering expunged convictions to deny plaintiff parole" and describing Count III as "Claim 2: Defendants violated Plaintiff's Fourteenth Amendment rights by failing to provide a sufficiently specific explanation for the decision to deny Plaintiff parole. [Dkt. No. 15]

at 1. Defendants filed a Partial Answer to "Claim 1" (comprised of Counts I and II) [Dkt. No. 13] and a Partial Motion to Dismiss as to "Claim 2" (Count III in the Complaint). Although plaintiff disagrees with defendants' interpretation of the Complaint, this disagreement is immaterial to the Motion, which seeks dismissal of only plaintiff's claim regarding the adequacy of defendants' proffered reasons for denying plaintiff parole (Count III).

The Complaint presents four sub-claims within Count III:

A. Defendants' reasons for denying parole do not meet minimum due process requirements.

B. Defendants' reasons for denying parole are constitutionally inadequate pursuant to Fourth Circuit case law.

C. Defendants' reasons for denying parole are in direct conflict with the requirements of Va. Code § 53.1-136(8).

D. Defendants' reasons for denying parole are based upon bias, such as an across-the-board practice of denying parole until an arbitrary minimum or a pre-determined number of years is served.

[Dkt. No. 1] at 21. Plaintiff's claims will be addressed in turn.

    A.    *Subclaims A & B*

Subclaims A and B allege that the reasons for defendants' denying plaintiff parole violated his due process rights under the United States Constitution. Fourth Circuit and Supreme Court precedent clearly define the level of process that a prisoner is due when under consideration for parole.

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. § XIV, § 1. In analyzing an inmate's due process claim, a court must first consider whether, and to what extent, the plaintiff has identified a protectable interest under the Fourteenth Amendment. Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1,

7 (1979); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). If a complaint identifies a protectable interest, a reviewing court must determine whether the state afforded the plaintiff the minimum procedural protections required by the Fourteenth Amendment when it deprived him of this interest. Morrissey v. Brewer, 408 U.S. 471, 481 (1972); Slezak, 21 F.3d at 593. "A liberty interest may arise from the Constitution itself" or "from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Although prisoners have no constitutional right to release before the expiration of a lawful sentence, see Greenholtz, 442 U.S. at 7, Virginia law recognizes that inmates have a limited liberty interest in being considered for parole. See Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012).

Once a liberty interest has been identified, the next step is to determine whether the plaintiff received due process when he was deprived of that interest. The Fourth Circuit has made clear that the level of procedural protection owed to a state prisoner who is being considered for parole is "minimal" because there are few "context[s] more deserving of federal deference than state parole decisions." Id. (citing Vann v. Angelone, 73 F.3d at 519, 522 (4th Cir. 1996)). The Fourth Circuit has held that all that is owed to an inmate being considered for parole is "an opportunity to be heard and a statement of reasons indicating ... why parole has been denied." Bowling v. Va. Dep't of Corrs., 920 F.3d 192, 200 (4th Cir. 2019) (quoting Bloodgood v. Garraghty, 783 F.2d 470, 473 (4th Cir. 1986)).

Here, the Complaint acknowledges that plaintiff received an opportunity to be heard and a statement of the reasons why he was denied parole. [Dkt. No. 1] at 8-12. After plaintiff received a hearing on July 21, 2020, the Parole Board provided a letter stating the reasons it denied plaintiff parole, including the "serious nature and circumstances of [plaintiff's] offense" and its conclusion that plaintiff should "serve more of [his] sentence prior to release on parole."

6

Id. To grant parole at that time, the letter stated, would be to "diminish the seriousness of [plaintiff's] crime." Id. By providing a statement of reasons for its decision, the Parole Board provided all of the process to which plaintiff was entitled.

Plaintiff takes issue with what he describes as the "vague and conclusory boilerplate reasons" defendants offered, see [Dkt. No. 19 at 15], but courts within the Fourth Circuit have repeatedly held that similar explanations are constitutionally adequate. See, e.g., Reynolds v. Virginia, No. 7:17-cv-517, 2019 WL 691793, at *5 (W.D. Va. Feb. 19, 2019) ("Here, the Board satisfied the minimum due process requirements when they denied Plaintiff parole because of the seriousness of his crime and his pattern of criminal conduct."); Hoskin v. Brown, No. 1:14cv759, 2015 WL 5247595, at *5 (E.D. Va. Sept. 8, 2015) (finding that the Parole Board's identification of the "serious nature and circumstances of offense" and the "risk to the community" plaintiff posed satisfied due process and observing that "there is no constitutional requirement for the [Board] to provide plaintiff with advice on how to overcome the obstacles of parole review").

Plaintiff argues that the Fourth Circuit articulated a more demanding due process requirement in Franklin v. Shields, 569 F.2d 784, 797 (4th Cir. 1978), which considered that the Parole Board's then-relevant "procedure of supplying general reasons [for denying parole] *and providing further explanation on request*" was "constitutionally adequate." [Dkt. No. 19] at 19 (quoting Franklin at 797) (emphasis added). Based on the Franklin opinion, plaintiff argues that defendants' failure to respond to *his* request for further explanation deprived him of the process he was owed under Franklin.

In stating that the Parole Board's behavior was constitutionally adequate, the Fourth Circuit in Franklin concluded only that the Board had satisfied the level of process owed to the plaintiff; it did not hold that the process the plaintiff received represented the minimum level of

7

process required by law. Indeed, in several opinions issued after Franklin, the Fourth Circuit has clearly held that "a parole board need only provide an offender an opportunity to be heard and a statement of reasons indicating ... why parole has been denied." Bowling, 920 F.3d at 200.

B.   Subclaim C

Plaintiff argues in Subclaim C that Virginia state law vested him with a protectable liberty interest in receiving "specific reasons" for the denial of parole. [Dkt. No. 19] at 21. He claims that, in 2020, the Virginia General Assembly amended Va. Code § 53.1-136, a statute that lays out the "powers and duties" of the Virginia Parole Board. [Dkt. No. 1] at 9. Subsection (8) of this statute now states that the Board shall:

> Ensure that each person eligible for parole receives a timely and thorough review of his suitability for release on parole, including a review of any relevant post-sentencing information. If parole is denied, the basis for the denial of parole shall be in writing and shall give specific reasons for such denial to such inmate.

Va. Code § 53.1-136(8). According to plaintiff, defendants provided only "general reasons" when denying him relief and thereby acted in violation of the statute. [Dkt. No. 19] at 22-23.

As stated above, state law or policy can create protectable liberty interests. See Burnette, 687 F.3d at 181. But, "[s]tate law or policy must provide a *substantive* expectation or interest to create a liberty interest," Henderson v. City of Roanoke, Va., No. 20-2386, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022), because the "expectation of receiving *process* is not, without more, a liberty interest protected by the Due Process Clause," Olim v. Wakinekona, 461 U.S. 238, 250 n.12 (1983) (emphasis added). A state-created liberty interest arises when a statute places "substantive limitations on official discretion" through "particularized standards or criteria." Id. at 249 (internal quotation marks omitted). Where "an administrative process does not require specific substantive outcomes, but merely authorizes and directs particular actions and remedies,

8

the administrative process does not create 'entitlements' subject to constitutional protections under the Fourteenth Amendment." Forrester v. Bass, 397 F.3d 1047, 1056 (8th Cir. 2005).

The Fourth Circuit's recent decision in Henderson is instructive. At issue in that case was a section of the Virginia Code that authorized localities to establish, by ordinance, "a procedure whereby the owner, lessee, custodian, or person lawfully in charge … of real property may designate the local law-enforcement agency as a 'person lawfully in charge of the property' for the purpose of forbidding another to go or remain upon the lands, buildings or premises." Henderson, at *1 (quoting Va. Code § 15.2-1717.1). The statute stated that any such ordinance "shall require that any designation be in writing and on file with the local law-enforcement agency." Id.

Pursuant to the state statute, the City of Roanoke adopted Roanoke City Code § 21-32(b), which provided:

> Any owner of real property may, in writing on a form prescribed by the chief of police, designate the police department as a person lawfully in charge thereof … for the purpose of forbidding another to go or remain upon the lands, buildings or premises of such owner. Such designation shall … be kept on file in the office of the chief of police or in such other location within the police department as the chief of police deems appropriate.

Id. at *2.

The parties in Henderson agreed that the Roanoke Police possessed a form that purported to designate the department as the "person lawfully in charge of" the Valley View Walmart, a facility from which the police had banned the appellant; however, the appellant argued that the form held by the police was defective because Valley View Walmart was owned by "Wal-Mart Business Real Estate Trust," and the company identified on the form was "Wal-Mart," a separate corporate entity. Id. Reasoning that the correct entity "never authorized the Roanoke Police Department to act as its trespass bar agent," plaintiff argued that he had a liberty interest in "not

9

being prohibited by police officers from being at or returning to" the Walmart store in question. Id.

The Fourth Circuit disagreed with the appellant, finding that Va. Code § 15.2-1717.1 left "the particular substantive outcome in each case"—i.e. the enforcement of trespassing prohibitions—"to the sound discretion of trained law enforcement officers." Id. (quoting Forrester, 397 F.3d at 1056). With respect to the retention of the designation document, the law did no more than "outline[] procedural requirements that localities ... must follow *if* they exercise their discretionary authority to permit landowners to designate local law enforcement as trespass agents." Id. at *3 (emphasis in original). Because the statute did not "require specific substantive outcomes" but "merely authorize[d] and direct[ed] particular actions and remedies," it did not create "entitlements subject to constitutional protections under the Fourteenth Amendment." Id.

Just as Va. Code § 15.2-1717.1 did nothing to limit the "sound discretion of trained ... law enforcement officers" in Henderson, Va. Code § 53.1-136(8) does nothing to curb or limit the Parole Board's discretion to grant or deny a prisoner parole. Instead, § 53.1-136(8) merely identifies a procedural requirement Parole Board members must follow if they exercise their discretionary authority to issue a negative parole decision. Consequently, the statute does not vest plaintiff with a liberty interest in receiving "specific reasons" for his denial of parole.

C.    *Subclaim D*

In Subclaim D, plaintiff asserts that the Parole Board's decision was based upon biases, "such as an across-the-board practice of denying parole until an arbitrary minimum or [] pre-determine[d] number of years [have been] served." [Dkt. No. 1] at 26.

10

The appellants in Burnette v. Fahey, 687 F.3d 171 (4th Cir. 2012), raised a similar argument, which was rejected by the Fourth Circuit. In Burnette, appellants claimed that Parole Board members had "failed to consider them for parole in a fair and meaningful manner" by neglecting to "determine whether a prisoner [was] suitable for parole through an individual analysis of the factors identified in the [Parole Board] Policy Manual." Burnette, 687 F.3d at 182. The Fourth Circuit affirmed the district court's finding that appellants had failed to provide factual allegations to support the notion that they had not received individualized consideration and that they had therefore failed to state a plausible claim "under the Iqbal-Twombly pleading standard." Id. at 183. Observing that "[e]ach of the inmates was convicted of a very serious crime or crimes, for which he or she received a lengthy sentence," the Fourth Circuit concluded that "[i]t would be well within the Board's discretion to consider such a prisoner holistically and nevertheless [] determine that he or she has not served a sufficiently lengthy sentence in light of the grave crime." Id.

The same is true here. Subclaim D is unsupported by any substantive factual allegations to lend it plausibility. This section of the Complaint instead consists of mere speculative and conclusory statements, including claims that Parole Board members "have a predetermined judgment about whether parole should be granted or denied based on factors that are not part of the hearing," [Dkt. No. 1] at 28, that members are not "neutral decision-makers," id. at 27, and that examiners "infuse their own personal beliefs and biases into the parole consideration process," id.

Plaintiff emphasizes that he repeatedly informed his parole examiners that ten of his sixteen criminal convictions had been vacated. But he offers no allegations to support the notion that the Parole Board's decision was based on those overturned convictions and not on the six

11

other convictions arising out of the same criminal conduct and for which he was sentenced to life in prison. He offers only conclusory allegations that fail to suggest that his valid convictions did not factor into the decision to deny him parole. For these reasons, the Court concludes that plaintiff, like the appellants in <u>Burnette</u>, has failed to state a viable claim for relief.

### IV.

For the reasons stated above, defendants' Partial Motion to Dismiss will be granted in an Order that will accompany this Memorandum Opinion.

Entered this 22nd day of July 2022.

Alexandria, Virginia

/s/ *[signature]*
Leonie M. Brinkema
United States District Judge