IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **Jeffrey Adkins,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | 1:21cv1061 (LMB/JFA) |
| | ) | |
| **Tonya D. Chapman, et al.,** | ) | |
| **Defendants.** | ) | |

MEMORANDUM OPINION

Defendants Tonya D. Chapman, Rev. A. Lincoln James, Sherman P. Lea Sr., and Kemba Smith Pradia ("defendants") have filed a Motion for Summary Judgment ("Motion") in this civil rights action brought by Virginia state prisoner Jeffrey Adkins ("plaintiff"). Defendants have also filed a Roseboro[1] notice advising plaintiff of his right to respond to the Motion. [Dkt. No. 32]. In response, plaintiff filed a motion under Fed. R. Civ. P. 56(d), seeking additional time to conduct discovery before responding to defendants' Motion. [Dkt. No. 33]. The Court granted plaintiff's motion and has received plaintiff's formal Opposition to defendants' Motion for Summary Judgment, see [Dkt. Nos. 43, 44]. Because the defendants have not filed any reply to plaintiff's Opposition, the Motion for Summary Judgment is deemed fully briefed and ready for consideration. For the reasons explained below, the Motion will be granted, and this action will be dismissed.

**I. Background**

Plaintiff alleges that defendants, who are former members of the Virginia Parole Board ("Parole Board" or "Board"), violated his rights under the Fourteenth Amendment in two ways:

---

[1] See Roseboro v. Garrison, 258 F.2d 309 (4th Cir. 1975).

by considering reversed and annulled convictions when they denied him parole and by failing to remove from his parole file incorrect and prejudicial information regarding reversed and annulled convictions.[2] [Dkt. No. 1].

With respect to these claims, the following facts are undisputed. Arising out of a "single criminal episode on October 1, 1989," see [Dkt. No. 1] at 5, ¶ 16, plaintiff was arrested and charged with two counts of abduction, two counts of abduction with intent to defile, one count of aggravated sexual battery, one count of illegally wearing a mask, one count of breaking and entering, four counts of robbery, four counts of use of a firearm in the commission of a felony, and one count of sodomy by force, see [Dkt. No. 31-2] at 1-2; Adkins v. Commonwealth, 13 Va. App. 519, 520 n.1 (Va. Ct. App. 1992).

These charges were split into two groups and tried separately. In the first trial, plaintiff was tried on the abduction, aggravated sexual battery, and mask charges, and in the second, he was tried on the breaking and entering, robbery, firearm, and sodomy charges. See Adkins, 13 Va. App at 520 n.1. Although plaintiff was found guilty of all charges at each trial, his convictions in the second trial for breaking and entering, robbery, use of a firearm in the commission of a felony, and forceful sodomy were overturned on appeal after the Court of Appeals of Virginia found that plaintiff's right to a speedy trial had been violated as to those charges. See generally Adkins v. Commonwealth, 13 Va. App. 519 (Va. Ct. App. 1992). Nevertheless, plaintiff remains incarcerated, as his convictions for abduction, aggravated sexual

---

[2] Plaintiff's Complaint also alleged that defendants violated his rights by offering him an inadequate explanation for denying him parole in 2020. See [Dkt. No. 1] at 20-29. The Court dismissed this claim on July 22, 2022 in response to a Partial Motion to Dismiss. See [Dkt. Nos. 24, 25].

2

battery, and illegal wearing of a mask remain intact. For those offenses, plaintiff was sentenced to serve multiple life sentences, plus forty-five years. [Dkt. No. 32-2] at 1-2, ¶ 4.

 Plaintiff became eligible for discretionary parole as to the valid convictions on October 17, 2006. Id. Becoming eligible for discretionary parole does not mean that it is appropriate to release the inmate. To determine suitability for release, the Virginia Parole Board, of which the defendants are former members, considers several factors, including the nature of the inmate's offense or offenses, the length of the sentence imposed, the amount of time the inmate has served, the inmate's criminal history, the inmate's prior experience and conduct under supervision, whether the inmate would pose a risk to his community, the inmate's personal and social behavior, the inmate's institutional experience, whether the inmate has exhibited changes in motivation and behavior, the inmate's release plan, and the existence of community and family resources to assist the inmate in rejoining society. Id. at 2-3, ¶ 7. Additionally, interested parties such as friends, family members, or victims may meet with members of the Parole Board to present information relevant to the decision to grant or deny parole. Id.

 On July 21, 2020, Parole Examiner Timothy Harlow interviewed plaintiff for parole consideration. [Dkt. No. 1] at 9, ¶ 36; [Dkt. No. 31-2] at 4, ¶ 11; [Dkt. No. 43-1] at 4. During the interview, plaintiff and Harlow discussed the events that led to plaintiff's arrest and charges. [Dkt. No. 31-2] at 4, ¶ 11. When asked why he had acted in the manner he did, plaintiff stated, "Well, I was hurting and I want[ed] to hurt someone else." Id. Plaintiff and Harlow also discussed "the ten (10) reversed and dismissed convictions." [Dkt. No. 44] at 4, ¶ 15. Plaintiff "explain[ed] that these convictions were reversed and annulled by the Va. Court of Appeals." Id. This is reflected in Harlow's notes, which state that plaintiff faced "[c]ompanion charges and convictions for Robbery, Sodomy, B&E with deadly weapon and use of firearm" but that "those

3

particular convictions were dismissed in 1992 by the Virginia Court of Appeals." [Dkt. No. 43-1] at 5. At the end of the interview, plaintiff asked Harlow to explain his concerns regarding plaintiff's fitness for release on parole. [Dkt. No. 44] at 5, ¶ 19. Harlow responded by stating, "crimes committed! You broke into a house ... and committed anal forcible sodomy on a woman, that's why you are being denied parole!" Id. at ¶ 20.

Harlow's written recommendation that plaintiff be denied parole highlighted details from the Pre-Sentence Investigation drafted in 1992, plaintiff's institutional disciplinary history, education, security level, work assignment, medical history, plan for release, and victim opposition. [Dkt. No. 31-2] at 4, ¶ 11. On September 16, 2020, the Virginia Parole Board accepted Harlow's recommendation and denied plaintiff parole. See [Dkt. No. 1]. In a letter to plaintiff, the Board justified its decision based on the "[s]erious nature and circumstances of [plaintiff's] offenses," the need for plaintiff to "serve more of [his] sentence prior to release on parole," and because "[r]elease at [that] time would diminish [the] seriousness of [plaintiff's] crime[s]." [Dkt. No. 31-2] at 75-76. After plaintiff received the Board's denial, he requested reconsideration of the decision. [Dkt. No. 1] at 12, ¶ 49. The Board denied plaintiff's request on February 26, 2021. Id. at 13, ¶ 52.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of

law, the nonmoving party "must show that there is a genuine dispute of material fact for trial …

by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v.

Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for

summary judgment, a district court must consider the evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences from those facts in favor of that party.

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

Two core issues remain[3] before the Court, both of which relate to the Virginia Parole

Board's decision to deny plaintiff parole in 2020,[4] and both of which arise under the Fourteenth

Amendment's Due Process Clause: a claim that defendants improperly based their decision to

deny plaintiff parole on criminal convictions that had been reversed and annulled, and a claim

that plaintiff's parole file contains incorrect, prejudicial information about the reversed and

annulled convictions. [Dkt. No. 1] at 15-20.[5]

---

[3] By Order dated July 22, 2022, the Court granted a Partial Motion to Dismiss, finding that the third ground raised in the Complaint—which asserted that defendants offered a constitutionally inadequate explanation for denying plaintiff parole—failed to state a claim upon which relief could be granted. [Dkt. Nos. 24-25].

[4] Plaintiff has been denied parole every year since 2007, and the record contains information regarding many of these denials; however, the Complaint's factual allegations and legal claims focus solely on the Virginia Parole Board's 2020 decision to deny parole. See [Dkt. No. 1]. Therefore, the Court focuses its analysis only on this decision.

[5] Plaintiff raises a futile legalistic argument that defendants failed to oppose one of the claims raised in the Complaint and have therefore "admitted those allegations." See [Dkt. No. 43] at 14. This argument is based on the fact that defendants construed plaintiff's claims differently in their previously filed Motion to Dismiss than in their currently pending Motion for Summary Judgment. See id. ("[D]efendants fail[ed] to submit an answer or other responsive pleading denying the factual allegations of plaintiff's "actual" claim #2."). Because defendants have thoroughly opposed each of the claims raised in the Complaint in the two dispositive motions they have filed, plaintiff's argument is without merit.

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. § XIV, § 1. Thus, in analyzing an inmate's due process claim, a court must consider whether the plaintiff has been deprived of something in which he had a protectable interest. Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). If a complaint successfully identifies a protectable interest, a reviewing court must determine whether the state afforded the plaintiff the minimum procedural protections required by the Fourteenth Amendment in depriving him of that interest. Morrissey v. Brewer, 408 U.S. 471, 481 (1972); Slezak, 21 F.3d at 593.

Plaintiff does not contend that his property or life is at stake. Instead, he claims to have a valid liberty interest at stake. "A liberty interest may arise from the Constitution itself" or "from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). With respect to Adkins's first claim, concerning being considered for release on parole, Virginia state law has created a limited liberty interest, see Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012), and as to the second claim, about inaccurate information in his files, an inmate has a conditional right to have "prejudicial erroneous information expunged from [his] prison files." See Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979).

**A.      Claim One**

In Claim One, plaintiff asserts that defendants violated his rights under the Fourteenth Amendment through their "use of reversed & annulled convictions ... in consideration of parole determinations." [Dkt. No. 1] at 15. Both the Fourth Circuit and the Supreme Court of the United States have made clear that the level of procedural protection owed to a state prisoner being considered for parole is "minimal." See Swarthout v. Cooke, 562 U.S. 216, 220 (2011);

6

Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996)). All that is owed to the prisoner is "an opportunity to be heard and," if relevant, "a statement of reasons indicating ... why parole has been denied." Bowling v. Va. Dep't of Corrs., 920 F.3d 192, 200 (4th Cir. 2019) (quoting Bloodgood v. Garraghty, 783 F.2d 470, 473 (4th Cir. 1986)); see also Swarthout, 562 U.S. at 221 (opining that "the beginning and the end of [a] ... federal court's inquiry" into whether a potential parolee's due process rights have been upheld is to determine whether the inmate had "an opportunity to be heard and was provided a statement of the reasons why parole was denied").

The record makes clear that the Virginia Parole Board provided plaintiff with this level of process. On July 21, 2020, Parole Examiner Timothy Harlow interviewed plaintiff for parole consideration, thereby allowing plaintiff an opportunity to be heard. [Dkt. No. 1] at 9, ¶ 36; [Dkt. No. 31-2] at 4, ¶ 11; [Dkt. No. 43-1] at 4. On September 16, 2020, the Parole Board sent plaintiff a letter informing him that he was being denied parole because of the "[s]erious nature and circumstances of [his] offenses," concluding that he "should serve more of [his] sentence prior to release on parole," and that "[r]elease at [that] time would diminish [the] seriousness of [his] crime[s]." [Dkt. No. 31-2] at 75-76. After plaintiff received this letter, he requested reconsideration of the Board's decision. [Dkt. No. 1] at 12, ¶ 49. The Board denied plaintiff's request on February 26, 2021. Id. at 13, ¶ 52.

Plaintiff disagrees that he received the level of process he was owed, arguing that he has a right not only to consideration for parole, but to "fundamentally fair" consideration for parole. [Dkt. No. 43] at 7. That the Parole Board may have considered his vacated convictions, he posits, rendered his parole consideration "fundamentally unfair" and thus violative of his rights under the Due Process Clause. Id.

7

Plaintiff's argument is meritless. His personal definition of "fairness" is irrelevant to the Court's constitutional analysis, and the record, assessed pursuant to the precedent discussed above, establishes that he received all of the process he was owed. Even accepting as true the plaintiff's proposition that the Parole Board took vacated convictions into account in denying him parole,[6] he is not owed any relief because "where the denial of parole ... rests on one constitutionally valid ground, the Board's consideration of an allegedly invalid ground would not violate a constitutional right." Bloodgood, 783 F.2d at 475 (4th Cir. 1986) (citing Zant v. Stephens, 462 U.S. 862 (1983)).

Other federal courts addressing similar or analogous claims have come to the same conclusion. See, e.g., Gregory v. Muse, No. 3:13cv233, 2014 WL 2967948, at *3 (E.D. Va. July 1, 2014), aff'd No. 14-7124, 585 F. App'x 46 (4th Cir. Oct. 22, 2014) (finding plaintiff not entitled to relief based on Parole Board's allegedly "inaccurate" citation of "a record of institutional infractions" because the plaintiff "fail[ed] to allege, much less demonstrate, that the other reasons cited by the [Parole Board] for denying parole were invalid"); Acinelli v. Holland, No. 15-7917-AB, 2016 WL 5662048, at *2 (W.D. Cal. July 22, 2016) ("Although petitioner also complains that the parole board relied on improper or erroneous considerations in reaching its parole eligibility finding, this Court lacks the authority to evaluate the evidence used to deny petitioner parole. Rather, the Court can look only at whether the minimal requirements of due

---

[6] To be clear, the record does not support such a finding. Rather, the parole examiner's notes, which plaintiff himself submitted, explicitly state that several of plaintiff's previous convictions had been vacated. See [Dkt. No. 34-1] at 5 ("Companion charges and convictions for Robbery, Sodomy, B&E with deadly weapon and use of firearm netted [plaintiff] an additional two (2) life sentences + 88 years, but those particular convictions were dismissed in 1992 by the Virginia Court of Appeals."). There is therefore no reason to believe that the Parole Board based its decision on anything but plaintiff's multiple valid convictions, which included two counts of abduction, two counts of abduction with intent to defile, one count of aggravated sexual battery, and a mask charge, for which he received multiple life sentences.

8

process have been met."); Pollard v. Helf, 594 F. Supp. 2d 333, 333 (W.D.N.Y. 2009) (denying plaintiff relief despite the parole state board's "mention" of a vacated assault conviction because "there [was] no evidence suggesting that the board would have reached a different decision had it not taken that conviction into consideration" and "plaintiff's [still-valid] conviction for murder ... arose out of the same facts as his assault conviction").

In short, the Court is not swayed by plaintiff's arguments that he was owed more process than he received with respect to being considered for release on parole. From a legal perspective, there is no basis for such a claim, and from a practical perspective, it is obvious that it would be impossible for the Parole Board to isolate only the facts relevant to plaintiff's still valid convictions because, as plaintiff himself concedes, the valid and invalid convictions arose out of the same criminal episode.

### B. Claim Two

In Claim Two, plaintiff asserts that defendants have failed to remove incorrect and prejudicial information regarding previously vacated criminal convictions from his parole file. [Dkt. No. 1] at 18. An inmate has a federally guaranteed right to have "prejudicial erroneous information expunged from [his] prison files" if he shows "(1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979). Here, plaintiff contends that he has satisfied each element of the Paine test; he claims that false information regarding previously vacated criminal convictions exists within his parole file and that defendants have relied on that information in denying him parole. See [Dkt. No. 44] at 9, ¶¶ 39-41.

This Court has previously held that Virginia inmates are unable, as a matter of law, to demonstrate that the presence of false information in a parole file could be relied on to a

constitutionally significant degree because Virginia inmates have no protected liberty interest in being granted parole in the first place. See Morton v. Fahey, No. Civ.A. 04-428-AM, 2004 WL 3214414, at *1 (E.D. Va. July 12, 2004), aff'd, No. 04-7249, 2004 WL 2980750 (4th Cir. Dec. 22, 2004). This ruling is consistent with the Fourth Circuit's decision in Hill v. Jackson, 64 F.3d 163 (4th Cir. 1995), which stated: "Because the inmates here have no liberty interest in parole release under Virginia law, neither can they have any liberty interest in the underlying procedures governing parole determination, so long as the procedures themselves satisfy due process." Hill, 64 F.3d at 171.[7]

Plaintiff also fails to establish that any information in his parole file regarding overturned convictions is false. Although plaintiff's file may contain information that is tangentially related to the vacated convictions, such as parole interview notes which mention the overturned convictions and a presentence investigation report drafted before the convictions were overturned, the record also contains important contextual information demonstrating that the convictions in question are no longer valid. For instance, the parole examination notes plaintiff submitted in opposition to the Motion for Summary Judgment explicitly state that several of plaintiff's previous convictions had been vacated. See [Dkt. No. 34-1] at 5 ("Companion charges and convictions for Robbery, Sodomy, B&E with deadly weapon and use of firearm netted [plaintiff] an additional two (2) life sentences + 88 years, but those particular convictions

---

[7] Citing Hill v. Jackson, 64 F.3d 163 (4th Cir. 1995), and other cases, several courts have opined that Paine has been effectively overruled. See, e.g., Plitt v. Gonzalez, No. 1:08-cv-1352-BLW-LMB, 2011 WL 3813099, at *3 (E.D. Cal. Aug. 26, 2011) ("The Paine test appears to be suffering a death by a thousand cuts."); Foster v. New York City Probation Dep't, No. 11-cv-4732, 2013 WL 1342259, at *4 (E.D.N.Y. Mar. 7, 2013) ("[C]ourts have suggested that without a protected liberty interest in parole, a plaintiff cannot show that false information used in a parole decision was or could be relied upon in a constitutionally significant manner."). Because Paine has not been explicitly overruled, though, the Court will still assess plaintiff's claim under the test it announced.

10

were dismissed in 1992 by the Virginia Court of Appeals."). Even more tellingly, plaintiff himself concedes that "there are no conviction orders in [his] parole file ... for the reversed and annulled convictions." [Dkt. No. 44] at 9, ¶ 41.

For these reasons, the Court concludes that there is no inaccurate information in plaintiff's file. Therefore, defendants are entitled to judgment in their favor as to Claim Two.

## IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment will be granted in an Order that will accompany this Memorandum Opinion.

Entered this 31st day of May 2023.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge